## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

|  |  |  |
|---|---|---|
| DANNY WILLIAMS, | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| VS. | : | |
| | : | |
| DONALD BARROW; | : | |
| PAUL KING; Dr. SACHDEVA; | : | |
| SHEILA OUBRE; Dr. BROOME; | : | |
| Lt. OLIPHANT; RANDY TILLMAN; | : | |
| Dr. MENDOZA, | : | |
| | : | NO. 5:11-CV-431 (MTT) |
| | : | |
| Defendants | : | **ORDER & RECOMMENDATION** |

Plaintiff **DANNY WILLIAMS**, a prisoner at Washington State Prison in Davisboro, Georgia, has filed a *pro se* civil rights complaint under 42 U.S.C. § 1983.

Plaintiff also sought leave to proceed without prepayment of the $350.00 filing fee or security therefor pursuant to 28 U.S.C. § 1915(a). Based on Plaintiff's submissions, on November 4, 2011 the Undersigned ordered him to pay an initial partial filing fee of $16.00. Plaintiff filed a Motion for Reconsideration and has submitted an updated copy of his prisoner trust fund account. This updated copy shows that Plaintiff currently has no funds in his account. Therefore, the Undersigned **VACATES** the November 4, 2011 Order and **GRANTS** Plaintiff 's Motion for Reconsideration. Accordingly, Plaintiff may proceed *in forma pauperis* at this time and the Court waives the initial partial filing fee pursuant to 28 U.S.C. § 1915(b)(1). Plaintiff is nevertheless obligated to pay the full filing fee, as is directed later in this Order and Recommendation. The Clerk

of Court is **DIRECTED** to send a copy of this Order and Recommendation to the business manager at Washington State Prison.

# I. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1915A(a), a federal court is required to conduct an initial screening of a prisoner complaint "which seeks redress from a governmental entity or officer or employee of a governmental entity." Section 1915A(b) requires a federal court to dismiss a prisoner complaint that is: (1) "frivolous, malicious, or fails to state a claim upon which relief may be granted"; or (2) "seeks monetary relief from a defendant who is immune from such relief."

A claim is frivolous when it appears from the face of the complaint that the factual allegations are "clearly baseless" or that the legal theories are "indisputably meritless." *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993). A complaint fails to state a claim when it does not include "enough factual matter (taken as true)" to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (noting that "[f]actual allegations must be enough to raise a right to relief above the speculative level," and that the complaint "must contain something more . . . than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action") (internal quotations and citations omitted); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (explaining that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

In making the above determinations, all factual allegations in the complaint must be viewed as true. *Brown v. Johnson*, 387 F.3d 1344, 1347 (11th Cir. 2004). Moreover, "*[p]ro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).

In order to state a claim for relief under § 1983, a plaintiff must allege that: (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1581 (11th Cir. 1995). If a litigant cannot satisfy these requirements, or fails to provide factual allegations in support of his claim or claims, then the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003) (affirming the district court's dismissal of a § 1983 complaint because the plaintiff's factual allegations were insufficient to support the alleged constitutional violation). *See also* 28 U.S.C. 1915A(b) (dictating that a complaint, or any portion thereof, that does not pass the standard in § 1915A "shall" be dismissed on preliminary review).

## II. STATEMENT AND ANALYSIS OF CLAIMS

As is typical of Plaintiff's previous 42 U.S.C. § 1983 actions filed in various district courts,[1] Plaintiff has filed a lengthy complaint in which he alleges numerous claims against multiple

---

[1]*See Williams v. Chatman*, 5:01-CV-292 (HL) (M. D. Ga); *Williams v. Wetherington*, 1:02-CV-126 (WLS) (M. D. Ga.); *Williams v. Stanelle*, 5:04-CV-417 (CAR) (M. D. Ga.); and *Williams v. Stanelle*, 1:04-CV-1844 (JEC) (N. D. Ga.).

Defendants who are located at various prisons or facilities in the State of Georgia.  Specifically, Plaintiff has named Defendants from Washington State Prison (Donald Barrow, Lt. Oliphant); Dooly State Prison (Dr. Sachdeva, Sheila Oubre); Georgia State Prison (Dr. Broome); Augusta State Medical Prison (Dr. Mendoza); Metro-Atlanta Neurosurgery (Dr. Paul King);and Georgia Department of Corrections (Director Randy Tillman).  Each of these claims is addressed below:

## A.  DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED

### Background information

Plaintiff states that in 1997, he "began having shoulder, neck, and back pain." (Doc. 1 at 5). Following an MRI performed in 2005, he was approved for an anterior cervical disc fusion on August 17, 2005.  Plaintiff states that he was then transferred to Ware State Prison, where he explained his "worsening condition" to Dr. Ferrell (not named as a Defendant in this action) and Warden Tillman.  (Doc. 1 at 5).  According to Plaintiff, Dr. Ferrell wanted a second opinion. Plaintiff claims that in 2008, he was sent to Dr. Paul King of Metro Atlanta Neurosurgery and Dr. King recommended surgery.  Plaintiff states that his disc surgery was approved again, but later cancelled.  Plaintiff maintains that his condition deteriorated and that he advised Dr. Ferrell of the deterioration.

Plaintiff was transferred from Ware State Prison to Wilcox State Prison on some unspecified date.  At Wilcox, he informed Dr. Hill (not named as a Defendant in this action) of his need for surgery, but to no avail.  Plaintiff contends that he filed grievances regarding the matter and that his wife contacted officials with the Georgia Department of Corrections.  According to Plaintiff his

4

grievances only caused "fabricated disciplinary action" to be taken against him by unnamed officials at Wilcox State Prison.

It does not appear that Plaintiff is attempting to raise any claims regarding lack of medical care or "fabricated disciplinary action[s]" that occurred from 1997 through October 2009. Instead, it seems that Plaintiff has simply provided the Court with the background information he thinks is relevant to his current claims of lack of medical care, retaliation, and discrimination.

Plaintiff filed this action on October 27, 2011 and his Complaint is dated October 23, 2011. "Under the 'prison mailbox rule', a *pro se* prisoner's court filing is deemed filed on the date it is delivered to the prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.1 (11th Cir. 2009). Given the presumption that Plaintiff's complaint was given to prison authorities for mailing on October 23, 2011, any claim that accrued more than two years prior to October 23, 2011 would be barred by the applicable two year statute of limitations.[2] *Wilson v. Garcia*, 471 U.S. 261 (1985). Therefore,, it is hereby **RECOMMENDED** that the Court **DISMISS** any claims that occurred from 1997 until October 22, 2009.

Under 28 U.S.C. § 636(b)(1), Plaintiff may serve and file written objections to this recommendation with the District Judge to whom this case is assigned within fourteen (14) days after being served with a copy of this Order and Recommendation.

Current Claim

---

[2]Additionally, Plaintiff has already litigated his claim that in 2005 prison officials were deliberately indifferent to his serious medical needs. *See Williams v. Brown*, 6:07-CV-45 ( S. D. Ga. July 17, 2007).

Plaintiff states that in November 2009, he was transferred to Dooly State Prison, where he advised Defendants Dr. Sachdeva and Warden Sheila Oubre of his condition.  Plaintiff alleges that they took no action and at some unspecified time in 2010, "[his] body went numb, [he] lost his balance, [he] was constantly falling to the ground and into others causing additional injuries, [and he] could no longer hold anything in his hands."  (Doc. 1 at 7).  Plaintiff states that he advised Dr. Sachdeva and Warden Sheila Oubre, but they did nothing to help him.  Plaintiff alleges that "Dr. Sachdeva and Sheila Oubre,  with knowledge of [his] condition, need for surgery, risk associated, etc., failed to provide needed treatment, resulting [in] deliberate indifference to [his] medical needs." (Doc.1 at 20-21).

Plaintiff alleges he was sent back to Dr. Paul King of Metro Atlanta Neurosurgery on June 22, 2010 and Dr. King ordered an emergency MRI.  Plaintiff states that the emergency MRI "revealed one of the herniated discs . . . had seriously protruded into [his] spinal cord and changed the appearance of the cord under the protrusion" and "revealed the other several herniated discs." (Doc. 1 at 8).  According to Plaintiff, Dr. King scheduled surgery for June 30, 2010.  Plaintiff alleges that "with knowledge of [his] excruciating pain, inability to balance [himself] constant falling, ... and with knowledge of the results of the emergency MRI, Dr. King sent [him] away from his office to be returned to the office in one week, due to allegedly not being able to do [Plaintiff's] surgery until then."  (Doc. 1 at 8).

According to the Complaint, Dr. Sachdeva and Warden Oubre knew that Plaintiff was to return to Atlanta on June 29, 2010 for surgery on June 30, 2010, but did not allow him to go back

to Metro Atlanta Neurosurgery until July 29, 2010.  Plaintiff claims that during this month, Defendants Sachdeva and Oubre made him remain in the general population, where he stumbled into inmates, could not go to meals, could not brush his teeth, was in unbearable pain, and was unable to hold anything in his hands.

Plaintiff alleges that when he returned to Metro Atlanta Neurosurgery or the Atlanta Medical Center on July 29, 2010, Defendant Dr. King performed surgery on the "disc that had protruded into his spinal cord, but left the other herniated discs as they were."  (Doc. 1 at 9).  Plaintiff states that Dr. King ordered physical and occupational therapy, but when Plaintiff arrived at Georgia State Prison on August 5, 2010, Defendant Dr. Broome advised him that he would receive only physical therapy, which he received one to two times per week during his three-months stay at Georgia State Prison.  (Doc. 1 at 10).  Plaintiff states that he was still in pain and his condition worsened, but Defendant Dr. Broome discontinued all of Plaintiffs' pain medication.  Plaintiff states that the physical therapist ordered six additional weeks of therapy, but Dr. Broome "sent [Plaintiff] back to Dooly State Prison" in November 2010, where Dr. Sachdeva and Warden Sheila Oubre would not allow him to receive physical therapy.  (Doc. 1 at 11).

Plaintiff alleges that his follow-up physical was conducted by Defendant Dr. Mendoza at Augusta State Medical Prison.[3]  Plaintiff told Defendant Dr. Mendoza of his increasing pain and "worsening conditions, the remaining herniated discs, [and] the lack of therapies."  (Doc. 1 at 11).

---

[3]Plaintiff states that following the surgery and his return to prison, he did not see Dr. King again because "Dr. King was no longer under contract with the State."  (Doc. 1 at 10).

Nevertheless, Defendant Dr. Mendoza refused to do anything "on several occasions." (Doc. 1 at 11).

Plaintiff claims that he currently has numbness in his hands and upper body as well as legs and lower body, "recurring electrical type surges through [his] body," and "excruciating pain in [his] neck and back." (ECF No. 1 at 12). Plaintiff alleges that he has trouble writing, swallowing, washing, shaving, and brushing his teeth. (Doc. 1 at 12).

To state a viable claim of medical indifference, a plaintiff must show (1) "an objectively serious medical need" that, if left unattended, presents a substantial risk of serious harm; (2) a defendant's subjective knowledge, and more than negligent disregard, of that need; and (3) direct causation between the defendant's indifference and the plaintiff's injury." *Farrow v. West*, 320 F.3d 1235, 1245-46 (11th Cir. 2003).; *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011). A medical need is serious only if it has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would recognize the necessity for a doctor's attention. *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1186 (11th Cir. 1994). The prisoner must allege that the defendant's response was "poor enough to constitute 'an unnecessary and wanton infliction of pain', and not merely accidental inadequacy, 'negligence in diagnosis or treatment', or even 'medical malpractice' actionable under state law." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).

"Generally, an inmate who receives a medical diagnosis and care, but desires a different diagnosis or treatment, cannot show deliberate indifference." *Woody v. Cronic*, 401 F. App'x 509,

512 (11th Cir. 2010) (citations omitted).  Whether a defendant should employ additional diagnostic techniques or treatments is a classic example of a matter for medical judgment and, therefore, an inappropriate basis for Eighth Amendment liability.  *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995).   In some circumstances, a delay in providing medical care may amount to deliberate indifference, "'though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable'."  *Farrow v. West*, 320 F.3d 1235, 1246 (11th Cir. 2003) (quoting *McElligott v. Foley*, 182 F.3d 1248, 1255(11th Cir. 1999)).  "Some delay in rendering medical treatment may be tolerable depending on the nature of the medical need and the reason for the delay."  *Adams*, 61 F.3d at 1544.

It is with these principles in mind that the Court reviews Plaintiff's claims against these five Defendants.  The only allegation that Plaintiff appear to make against Dr. King[4] is that he was deliberately indifferent to his serious medical needs because, "with knowledge of [his] condition, the emergency MRI results, etc, and the risks, including paralyzation, . . . associated with not taking immediate action," Dr. King did not operate on him immediately. Instead, Dr. King scheduled the surgery for approximately one week later.  The fact that Dr. King scheduled surgery one week from the date a MRI was performed and Plaintiff's condition was diagnosed does not amount to deliberate indifference of a serious medical need.  While Plaintiff  ultimately was not returned to Metro Atlanta

---

[4]It appears that Dr. King was a private physician who was under contract with the State of Georgia to provide medical care for inmates.  As such, he acted "under color of state law for purposes of section 1983 when undertaking his duties" to treat a prisoner.  *See West v. Atkins*, 487 U.S. 42 (1988).

Neurosurgery or the Atlanta Medical Center until July 29, 2011, approximately one month after he was originally scheduled for surgery, there is no indication that Dr. King was responsible for this delay.

Moreover, to any extent that Plaintiff alleges Dr. King should have performed surgery on his remaining herniated discs, such allegation amounts to no more than a disagreement regarding the type or extent of treatment provided.  As such, this claim does not amount to deliberate indifference. *Woody v. Cronic*, 401 F. App'x 509, 512 (11th Cir. 2010).

Therefore, it is **RECOMMENDED** that Dr. King be **DISMISSED** from this action.

Under 28 U.S.C. § 636(b)(1), Plaintiff may serve and file written objections to this recommendation with the District Judge to whom this case is assigned within fourteen (14) days after being served with a copy of this Order and Recommendation.

In relation to **Drs. SACHDEVA, BROOME, and MENDOZA,** as well as **Warden SHEILA OUBRE**, it appears that Plaintiff has raised sufficient facts so that this claim against these Defendants should proceed beyond this initial screening.

B.  VISITATION

Plaintiff states that he was transferred to Washington State Prison in September 2011, where and on September 24, 2011, Lt. Oliphant and Warden Barrow falsely accused him of swallowing some unspecified contraband that his wife gave him during visitation.  Plaintiff alleges that he was strip-searched and placed in a dry-cell (no water in the toilet), but no contraband was ever found. Moreover, his wife consented to a strip-search and a car search, but no contraband was located.

Plaintiff complains that his wife has been removed from his visitation list **indefinitely**. Plaintiff alleges that he has offered to have non-contact visits, but Defendants Randy Tillman and Warden Barrow still deny her visitation. Plaintiff claims that she was removed from the list by Warden Barrow "without notice or opportunity to challenge the removal" and that there is no procedure for appealing the decision to have her removed. Plaintiff claims that he has "a liberty interest in visitation with [his] wife and [has] been deprived of such by Barrow [and] Oliphant . . . without due process." (Doc. 1 at 20).

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interest is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The Supreme Court has held that an inmate has no protected liberty interest in visitation arising directly from the Due Process Clause. *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989). However, "a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations, subject to the important limitations set forth in *Sandin v. Conner*, 515 U.S. 472 (2005)." *Wikinson*, 545 U.S. at 221-22. After *Sandin*, state laws or regulations that in the past had created liberty interests no longer do so unless as a result the prisoner is subjected to an "atypical and significant hardship" beyond that which is generally inherent in the "ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Although temporary withdrawal of visitation privileges is "not a dramatic departure from accepted standards for conditions of confinement," a liberty interest may be at stake "[i]f the withdrawal of all visitation privileges were permanent or for a much longer

11

period, or if it were applied in an arbitrary manner to a particular inmate,." ***Overton v. Bazzetta***, 539

U.S. 126, 137 (2003) (citing ***Sandin***, 515 U.S. at 485).

Given Plaintiff's allegations, the Court finds that this claim should go forward against

Defendants **OLIPHANT, BARROW, TILLMAN**.

C.  DISCRIMINATION AND RETALIATION

Plaintiff states that when he returned from Atlanta Neurosurgery on June, 22, 2010, Warden

Oubre placed him in the general population until July 29, 2010.  Plaintiff states that during this time,

he stumbled into inmates, could not go to meals, could not brush his teeth, and was unable to hold

anything in his hands.  Plaintiff alleges that when he filed grievances regarding these issues, Warden

Oubre retaliated against him by filing "falsified disciplinary reports" and then placing him in an

upstairs cell.

Plaintiff states that he was transferred to Washington State Prison in September 2011, where

the current warden is Donald Barrow.  Barrrow was previously the warden at Wilcox State Prison,

at the same time Plaintiff was incarcerated at that facility.  Plaintiff alleges that additional staff at

Washington State Prison have been employed at the various prisons in which he was previously

incarcerated.  Plaintiff alleges that in the past, he has filed various grievances and complaints against

many of these staff members.  According to Plaintiff, Donald Barrow is now retaliating against

Plaintiff because he filed these grievances and lawsuits in the past.

Plaintiff alleges that he has been falsely accused of possessing tobacco and that his daughter

is "harrassed, singled out, [and] searched" when she visits him at the prison. He also alleges that his

medications for his neck condition or herniated discs were discontinued by Dr. Rogers (not named as a Defendant in this action), who has never seen Plaintiff.  Plaintiff claims that these actions and the visitation issues he is experiencing at Washington State Prison are the result of racism and retaliation.  Specifically, Plaintiff states that he and his wife are white and the staff at Washington State Prison are predominately black and "are very racist."  Plaintiff claims that Warden Barrow "allows staff to run the prisons."  (Doc. 1 at 17).  Plaintiff claims that Lt. Oliphant routinely places white inmates in segregation and issues disciplinary reports against white inmates, but does not do the same for black inmates.   Plaintiff  claims that Lt. Oliphant was "motivated by retaliation and discrimination" when he falsely accused his wife of giving Plaintiff contraband and took her off the visitation list.  (Doc 1at 19).  Plaintiff claims that "Donald Barrow removed [his] wife from [the] visitation list in retaliation for exercising [his] rights via complaints/grievances, etc." (Doc. 1 at 20).

Plaintiff complains that both he and his wife have informed Randy Tillman that she was taken off the visitation list as a form of retaliation.  Plaintiff states that they have both informed Tillman that Plaintiff should be not housed at Washington State Prison.  According to Plaintiff, there is a limit on the number of miles his wife can travel to visit and he is not able to obtain "better medical treatment" at this facility.  Plaintiff alleges Randy Tillman refuses to have him relocated to another prison.  Plaintiff states that "Tillman's failure to take action is motivated by his retaliation based on my exercise of my rights."  (Doc 1 at 19).  Specifically, Plaintiff claims that when Defendant Tillman was warden of Ware State Prison in 2007, Plaintiff "was 2 hours late arriving for jury selection and trial in *Williams v. Battle*, due to Tillman not having [him] taken in time."

13

(Doc. 1 at 6). Plaintiff states that "Judge Royal ordered Tillman . . . to appear and explain" why Plaintiff was late. (Doc. 1 at 6). According to Plaintiff, Tillman was upset and indicated that he had gotten into trouble because of Plaintiff's late arrival. (Doc. 1 at 6). Plaintiff alleges that Tillman is currently retaliating against him because of this particular previous lawsuit.

In order to prevail on a claim of discrimination, Plaintiff must allege (1) "he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race" or some other constitutionally protected basis. *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Fla. Parole and Probation Comm*., 785 F.2d 929 (11th Cir. 1986). A defendant violates a plaintiff's equal protection rights only if he has the intent to discriminate. *Mercer v. Hammonds*, 134 F.3d 1066, 1070 (11th Cir. 1998) (explaining that proof of discriminatory intent or purpose is a necessary prerequisite to an equal protection clause claim). Thus, to establish a viable claim, a plaintiff must show purposeful discrimination. *Id*.

Plaintiff's claims regarding discrimination are nothing more than conclusory allegations. While Plaintiff has generally alleged racial discrimination, he has not recounted any specific facts that allow the Court to make an inference that any of the treatment he allegedly received from Defendants Oubre, Barrow, Oliphant, or Tillman were based on his race. *See Iqbal*, 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of cause of action, supported by mere conclusory statements do not suffice."). Plaintiff's assertions do not raise his right to relief

above the speculative level.  Moreover, he has failed to identify even one prisoner who was similarly situated and who received more favorable treatment from the named Defendants.

Therefore, it is hereby **RECOMMENDED** that Plaintiff 's claim of discrimination or violation of the Equal Protection Clause be **DISMISSED** from this action.

Under 28 U.S.C. § 636(b)(1), Plaintiff may serve and file written objections to this recommendation with the District Judge to whom this case is assigned within fourteen (14) days after being served with a copy of this Order and Recommendation.

Although the Complaint fails to set forth sufficient facts to support a claim of discrimination, Plaintiff has stated sufficient facts to allow his claim of retaliation can proceed.  Prison officials may not retaliate against inmates for filing lawsuits or grievances.  ***Wright v. Newsome***, 795 F.2d 964 (11th Cir. 1986).  While Plaintiff does not have a constitutionally protected liberty interest in being transferred to (or remaining in) any particular prison, prison officials may not transfer (or refuse to transfer) in retaliation because Plaintiff exercised his First Amendment rights to file grievances and lawsuits.  ***Bridges v. Russell***, 757 F.2d 1155, 1156-57 (11th Cir. 1985).

Accordingly, Plaintiff's claim that Defendants **OUBRE, BARROW, OLIPHANT, AND TILLMAN** violated his First Amendment rights by retaliating against him, shall go forward.

D.  CONDITIONS OF CONFINEMENT IN SEGREGATION

Plaintiff states that as of October 23, 2011 he is still in segregation.  Plaintiff makes the following allegations regarding the conditions of confinement in segregation:

> The segregation unit is infested with rats, roaches, ants, etc., there is no hot
> water available, the store list for segregation only contains a few items from the

population store list, there are no tv's, phones are not available regularly, there is no meaningful access to the law library, showers are not available regularly, ventilation is limited, the windows are all blacked out and/or covered, the unit and cells have not been cleaned in a long time and are filthy, including slots for food, bed frames, etc, and numerous items of personal property are not allowed in segregation.

(ECF No. 1 at 15).

These allegations do not establish a violation of the Eighth Amendment.  The cruel and unusual punishments standard applies to the conditions of a prisoner's confinement.  *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). However, "the Constitution does not mandate comfortable prisons." *Id.* at 349.  All that is required is that they be humane.  *Farmer v. Brennan*, 511 U.S. 825 (1994).  To prevail on an Eighth Amendment claim regarding the conditions of confinement, a plaintiff must demonstrate that (1) the conditions of which he complains are, from an objective standpoint, "sufficiently serious"; and (2) "prison officials 'acted with a sufficiently culpable state of mind' with regard to the conditions at issue." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

Under the first prong, the Court must "'assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk'." *Id.* (quoting *Helling v. McKinney*, 509 U.S. 25, 36 (1993)). Plaintiff's complaints viewed collectively are not so grave that exposure to these conditions "violates contemporary standards of decency." *Id*.  Courts have explained that cases in which a prisoner claims his conditions of confinement violate the Eighth Amendment "turn on severity, duration, or a combination of both; all that must add up to 'extreme' to be actionable." *Williams*

16

*v. Grant*, No. CV408-203, 2009 U.S. Dist. LEXIS 95683 at 13 (S. D. Ga. Sept. 24, 2009).  Plaintiff

has not alleged such "extreme" conditions during his confinement in segregation.  As plaintiff has

not, even taking all of his allegations as true, established the first prong of the above-described test,

the Court need not address the second prong.

Additionally, to any extent that Plaintiff's statement that "there is no meaningful access to

the law library" can be construed to assert a deprivation of access to the courts claim, Plaintiff

cannot prevail because he has not alleged an "actual injury in the pursuit of a nonfrivolous post-

conviction claim or § 1983 action.  *Wilson v. Blakenship*, 163 F.3d 1284 (11th Cir. 1998).

Therefore, it is hereby **RECOMMENDED** that Plaintiff's Eighth Amendment conditions

of confinement claim and denial of access to the courts claim be **DISMISSED** from this action.

Under 28 U.S.C. § 636(b)(1), Plaintiff may serve and file written objections to this

recommendation with the District Judge to whom this case is assigned within fourteen (14) days

after being served with a copy of this Order and Recommendation.

## III. CONCLUSION

For the reasons set forth above, it is recommended that Dr. King be dismissed from this

action and that the following claims be dismissed:  (1) any medical or "false disciplinary action"

claim that accrued two years prior to October 23, 2009; (2) the claim that Defendants Oubre,

Barrow, Oliphant, and Tillman have discriminated against Plaintiff or violated the Equal Protection

Clause; and (3) the claim regarding the conditions of confinement in segregation as well as any

access to courts claim arising from these conditions.  Plaintiff has fourteen days to file objections to these Recommendations with the District Judge to whom this case is assigned.

The following claims are to go forward against the following Defendants: (1) Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claim should go forward against **DEFENDANTS SACHDEVA, BROOME, MENDOZA, AND OUBRE**; (2)  Plaintiff's claim that his due process rights were violated when his wife was removed from his visitation list indefinitely should go forward against **DEFENDANTS OLIPHANT, TILLMAN, AND BARROW**; and (3) Plaintiff's claim that his First Amendment rights were violated when the Defendants retaliated against him for filing grievances and lawsuits should go forward against **DEFENDANTS OUBRE, BARROW, OLIPHANT, AND TILLMAN.**

Accordingly, it is hereby **ORDERED** that service be made against **ALL NAMED DEFENDANTS EXCEPT DR. PAUL KING** and that those Defendants file a Waiver of Reply, an Answer, or such other response as may be appropriate under Rule 12 of the FEDERAL RULES OF CIVIL PROCEDURE, U.S.C. § 1915, and the *Prison Litigation Reform Act*.

**Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).**

<u>**DUTY TO ADVISE OF ADDRESS CHANGE**</u>

During the pendency of this action, all parties shall at all times keep the clerk of this court and all opposing attorneys and/or parties advised of their current address.  Failure to promptly advise the Clerk of any change of address may result in the dismissal of a party's pleadings filed herein.

<u>**DUTY TO PROSECUTE ACTION**</u>

18

Plaintiff is advised that he must diligently prosecute his complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute. Defendants are advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed.  This matter will be set down for trial when the court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

### FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court.  A party need not serve the opposing party by mail if the opposing party is represented by counsel.  In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished (i.e., by U.S. Mail, by personal service, etc.).

### DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendants from whom discovery is sought by the Plaintiff.  The Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed.  Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the FEDERAL RULES OF CIVIL PROCEDURE.  The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian. **Plaintiff is hereby advised that failure to submit**

to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.

IT IS HEREBY ORDERED that discovery (including depositions and interrogatories) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendant (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the Defendants and granted by the court. This 90-day period shall run separately as to each Plaintiff and each Defendant beginning on the date of filing of each Defendant's answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall <u>not</u> be filed with the Clerk of Court. No party shall be required to respond to any discovery not directed to him or served upon him by the opposing counsel/party. The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery:   <u>except with written permission of the court first obtained</u>, **INTERROGATORIES** may not exceed TWENTY-FIVE (25) to each party, **REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS** under Rule 34 of the FEDERAL RULES OF CIVIL PROCEDURE may not exceed TEN (10) requests to each party, and **REQUESTS FOR ADMISSIONS** under Rule 36 of the FEDERAL RULES OF CIVIL PROCEDURE may not exceed FIFTEEN (15) requests to each party. No party shall be required to respond to any such requests which exceed these limitations.

<u>**REQUESTS FOR DISMISSAL AND/OR JUDGMENT**</u>

Dismissal of this action or requests for judgment will not be considered by the court absent the filing of a separate motion therefor accompanied by a brief/memorandum of law citing

supporting authorities.  Dispositive motions should be filed at the earliest time possible, but in any event no later than thirty (30) days after the close of discovery unless otherwise directed by the court.

### DIRECTIONS TO CUSTODIAN OF PLAINTIFF

Following the payment of the required initial partial filing fee or the waiving of the payment of same, the Warden of the institution wherein Plaintiff is incarcerated, or the Sheriff of any county wherein he is held in custody, and any successor custodians, shall each month cause to be remitted to the Clerk of this court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full. In accordance with provisions of the *Prison Litigation Reform Act*, Plaintiff's custodian is hereby authorized to forward payments from the Prisoner's account to the Clerk of Court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00.

IT IS FURTHER ORDERED AND DIRECTED that collection of monthly payments from Plaintiff's trust fund account shall continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

### PLAINTIFF'S OBLIGATION TO PAY FILING FEE

Pursuant to provisions of the *Prison Litigation Reform Act*, in the event Plaintiff is hereafter released from the custody of the State of Georgia or any county thereof, he shall remain obligated to pay any balance due on the filing fee in this proceeding until said amount has been paid in full; Plaintiff shall continue to remit monthly payments as required by the *Prison Litigation Reform Act*. Collection from the Plaintiff of any balance due on the filing fee by any means permitted by law is hereby authorized in the event Plaintiff is released from custody and fails to remit payments.  In

addition, Plaintiff's complaint is subject to dismissal if he has the ability to make monthly payments and fails to do so.

　　　　**SO ORDERED and RECOMMENDED**, this 30th day of December, 2011.


　　　　　　　　　　　　　　　s/ Charles H. Weigle
　　　　　　　　　　　　　　　Charles H. Weigle
　　　　　　　　　　　　　　　United States Magistrate Judge